# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **NUWAVE, LLC,** | |
| Plaintiff, | Civil Action No: _____ |
| v. | |
| **GUANGDONG ENAITER ELECTRICAL APPLIANCES CO. LTD.,** | **JURY TRIAL DEMANDED** |
| Defendant. | |

## COMPLAINT

Plaintiff NuWave, LLC, for its Complaint against Guangdong Enaiter Electrical Appliances Co. Ltd., alleges as follows:

## NATURE OF THE CASE

1. This is civil action for breach of contract and tortious interference with prospective economic advantage.

## THE PARTIES AND CONTRACTS

2. Plaintiff NuWave, LLC ("NuWave" or "Plaintiff") is a limited liability company organized under the laws of the State of Illinois with its principal place of business at 560 Bunker Ct., Vernon Hills, IL 60061.

3. Defendant Guangdong Enaiter Electrical Appliances Co. Ltd. ("Enaiter") is a Chinese company with a place of business at No. 5, Donghai Road, Dongfeng, Zhongshan City, Guangdong, China.

4. NuWave and Enaiter are parties to an Exclusive Manufacturing and Supply Agreement (the "Brio Supply Agreement"), duly executed by both and effective as of March 27,

2019, relating to the production of NuWave's Brio Air Fryer. A true and correct copy of the Brio Supply Agreement is attached hereto as Exhibit A.

5. NuWave and Enaiter are further parties to purchase orders issued under the Brio Supply Agreement. *See* Exhibit B (Purchase Order No. EN-2.6Q-20210114-36041/ EN-2.6Q-20210114-36041R, the "Brio Purchase Order").

6. NuWave and Enaiter are also parties to an Exclusive Manufacturing and Supply Agreement (the "Bravo Supply Agreement"), duly executed by both and effective as of March 27, 2019, relating to the production of NuWave's Bravo Digital Air Fryer Convection Oven. A true and correct copy of the Bravo Supply Agreement is attached hereto as Exhibit C. The Brio Supply Agreement and the Bravo Supply Agreement are collectively referred to herein as the "Supply Agreements."

7. NuWave and Enaiter are further parties to purchase orders issued under the Bravo supply agreement. *See* Exhibit D (Purchase Order No. NU-BRV1-20210111-20802/NU-BRV1-20210111-20802R) Exhibit E (Purchase Order No. EN-BRV1-20210114-20801), and Exhibit F (Purchase Order No. EN-BRV1-20210114-20802). Exhibits D-F are collectively referred to herein as the "Bravo Purchase Orders." The Brio Purchase Order and the Bravo Purchase Orders are referred to collectively herein as the "Purchase Orders."

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this matter pursuant 28 U.S.C. § 1332 because complete diversity of citizenship exists between all of the parties and the amount in controversy exceeds $75,000.

9. Personal jurisdiction over Enaiter is proper in this Court at least because Enaiter has voluntarily submitted to the personal jurisdiction of the "federal, state and local courts within

the State of Illinois" pursuant to the terms of the Supply Agreements. *See* Exhibit A at p. 7, Section XVI(1) and Exhibit C at p. 6, Section XIII(1).

10. Additionally, this Court has personal jurisdiction over Enaiter because Enaiter committed one or more acts complained of herein within Illinois and this District. Namely, Enaiter entered into contracts (*i.e.*, the Brio Supply Agreement, Brio Purchase Order, Bravo Supply Agreement, and Bravo Purchase Orders) with NuWave, an Illinois LLC residing in this District, to ship products to NuWave.

11. Venue regarding Enaiter is proper in this Court at least because Enaiter has agreed that venue is proper in the federal, state and local courts within the State of Illinois pursuant to the terms of the Supply Agreements. *See* Exhibit A at p. 7, Section XVI(1) and Exhibit C at p. 6, Section XIII(1).

12. Venue is also proper in this District pursuant to 28 U.S.C. § 1391(c)(3) because Enaiter is not a resident of the United States and therefore may be sued in any judicial district in the United States for venue purposes.

## BACKGROUND

### *NUWAVE AND ENAITER*

13. NuWave is a privately-owned company that specializes in designing and selling various houseware small appliances, such as, among other things, combination convection/conduction/infrared ovens, induction cooktops, and air fryers.

14. Relevant here, NuWave's Brio is an air fryer, while NuWave's Bravo is an air fryer convection oven. Both are among NuWave's most popular product offerings.

15. NuWave contracted with Enaiter, via the Brio Supply Agreement, for Enaiter to produce NuWave's Brio air fryer. NuWave and Enaiter further entered into purchase orders under

the Brio Supply Agreement, including the Brio Purchase Order, regarding specific orders/shipments of Brio air fryers.

16. NuWave further contracted with Enaiter via the Bravo Supply Agreement for Enaiter to produce NuWave's Bravo oven. NuWave and Enaiter further entered into purchase orders under the Bravo Supply Agreement, including the Bravo Purchase Orders, regarding specific orders/shipments of Bravo ovens.

17. Each purchase order under the Supply Agreements, including the Purchase Orders, provides an agreed "ETD" for each shipment. *See* Exhibits B, D, E, and F at 1 ("ETD/Yantian"). In the Purchase Orders, "ETD/Yantian" refers to the date that each shipment is to depart Yantian in China, *i.e.,* the date it is to be shipped to NuWave.

18. Each purchase order under the Supply Agreements, including the Purchase Orders, includes standard "NuWave, LLC Terms & Conditions of Purchase" ("Standard P.O. Terms").

19. The Standard P.O. Terms provide that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *See* Exhibit B at p. 3 ¶ 5, Exhibit D at p. 2 ¶ 5, Exhibit E at p. 3 ¶ 5, and Exhibit F at p. 3 ¶ 5. They further provide that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

20. The Standard P.O. Terms additionally provide that in the event of ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *See* Exhibit B at p. 3 ¶ 8, Exhibit D at p. 2 ¶ 8, Exhibit E at p. 3 ¶ 8, and Exhibit F at p. 3 ¶ 8 ▬▬

21. By accepting the Purchase Orders, Enaiter accepted the Standard P.O. Terms.

22. Additionally, both Supply Agreements provide that, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Exhibit A at p. 7, Section XVI(1) and Exhibit C at p. 6, Section XIII(1).

### *SINOSURE*

23. In China, small factories seek insurance from financial institutions that insure purchase orders against nonpayment, sometimes referred to as export credit insurance institutions. Once the purchase orders are insured against non-payment, the manufacturers are able to secure bank loans to fund production.

24. Many such insurance companies are affiliated with and/or funded by the Chinese government. China Export & Credit Insurance Corporation a/k/a Sinosure ("Sinosure") is one such company.

25. According to Sinosure's website, "China Export & Credit Insurance Corporation (hereinafter referred to as "SINOSURE") is a **state-funded** and policy-oriented insurance company established and supported by the state to promote China's foreign economic and trade development and cooperation. … By means of **export credit insurance against non-payment risks** for China's foreign trade and investment cooperation, SINOSURE promotes Chinese exports of goods, technologies and services, especially the exporting of high-tech and high-value-added capital products such as mechanical and electrical products." *See* Exhibit G, printout of

5

https://www.sinosure.com.cn/en/Sinosure/Profile/index.shtml last accessed and captured 4/25/2023 (emphasis added).

26. Relevant here, on information and belief, Sinosure has contracted with Enaiter to insure the Purchase Orders.

## ENAITER'S BREACH

27. As a part of the quality control, NuWave investigated and inspected products manufactured by Enaiter. NuWave discovered that Enaiter had substituted an inferior motor for the one from the original specification.

28. NuWave immediately informed Enaiter that the subject Bravo ovens did not meet the specification. Enaiter admitted that it had substituted the motors, apologized, and agreed to remake the products with the agreed motor.

29. As a result, several shipments in the Bravo Purchase Orders were shipped well beyond their agreed "ETD."

30. NuWave also inspected Brio products manufactured by Enaiter and discovered that they were poorly made. Among other things, the faulty Brio air fryers exhibited problems such as scratches and defective structures, poor wiring, deformed parts, assembly problems, and incorrect parts. Enaiter agreed to remake these products as well. As a result, multiple shipments from the Brio Purchase Order were shipped beyond their agreed "ETD."

31. The aforementioned shipment delays were Enaiter's fault, making Enaiter responsible for a three percent (3%) charge pursuant to the Standard P.O. Terms. Enaiter has refused to pay the 3% due under the Standard P.O. Terms.

32. Additionally, due to the later shipping dates, shipment costs were higher than they would have been if Enaiter had shipped the products on time. Enaiter has refused to pay the difference in shipping costs.

33. Furthermore, due to the shipping delays leading to a lack of inventory, NuWave was unable to meet customer demand during the delay periods. NuWave suffered significant lost sales as a result. For example, in January 2021 (prior to Enaiter's breach), NuWave sold approximately 5000 Bravo units and 4000-5000 Brio units of sales per week.

34. Further, on information and belief, because NuWave's products were out of stock for an extended period, the strength of its listings with Amazon.com was damaged within Amazon's algorithm. On information and belief, as a result, NuWave's listings on Amazon are now lower priority in customer search results than they were before the delays. NuWave has observed a reduction in unit sales of its products of approximately 200-300 units per week. NuWave believes and alleges that this is a direct and proximate result of Enaiter's delayed shipments.

### *INTERFERENCE WITH NUWAVE'S OPERATIONS IN CHINA*

35. Enaiter has asserted to NuWave that NuWave did not pay all amounts due under the Purchase Orders.

36. However, due to Enaiter's breaches of the Supply Agreements and Purchase Orders, NuWave's damages as alleged herein exceed the amounts that would be due under the Purchase Orders. Accordingly, NuWave does not owe Enaiter anything under the Purchase Orders. In fact, Enaiter owes NuWave money as compensation for its breaches.

37. Enaiter involved Sinosure as its agent in discussions regarding the Purchase Orders. NuWave has been in extended discussions with Enaiter and Sinosure where it has explained why it does not owe anything under the Purchase Orders.

38. However, instead of working with NuWave to resolve this issue, Enaiter, and/or Sinosure acting as Enaiter's agent, have exerted their influence in China – including, on information and belief, through Sinosure's ties to the Chinese government - to ensure that NuWave is completely unable to do business there.

39. NuWave has been blacklisted in China by Enaiter and/or Sinosure (as Enaiter's agent) in a way that no manufacturers will do business with NuWave. Specifically, the manufacturers are unable to obtain insurance for their purchase orders, which prevents them from securing necessary loans for production.

40. As a result, NuWave's business has suffered and will continue to suffer harm to its ability to meet customer demand and its business as a whole.

## COUNT I
## BREACH OF CONTRACT

41. Plaintiff realleges and incorporates each of the allegations set forth in Paragraphs 1-40 as if restated herein in their entirety.

42. The Supply Agreements and Purchase Orders are valid and enforceable contracts under Illinois law.

43. NuWave performed all that was required of it prior to the shipment of the orders under the Supply Agreements and Purchase Orders.

44. By shipping products beyond their ETD, Enaiter breached its contracts with NuWave, specifically, the Supply Agreements and the Purchase Orders.

8

45. As a result, NuWave was injured. Specifically, NuWave incurred additional shipping charges due to the delay in shipping that have not been reimbursed by Enaiter. NuWave also suffered lost sales in an amount to be proven, both in the orders it was unable to fulfill during the delay period and in the ongoing lost sales resulting from the harm done to its listings on Amazon.com.

46. Such damages were foreseeable at least because Enaiter was aware that shipment surcharges would result at least due to the ongoing challenges presented by the COVID-19 pandemic. The lost sales damages were foreseeable at least because Enaiter was aware of the nature of NuWave's business and of the large size of the shipments. Enaiter should have and did know that delays in shipment would result in NuWave's inability to meet customer demand.

47. Additionally, as required by the contract, Enaiter owes NuWave ▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ NuWave has been harmed because it has not received this payment.

48. No circumstances exist that would excuse Enaiter's breaches.

49. As a direct and proximate result of Enaiter's breaches, NuWave has been harmed as entitled to damages in excess of $75,000.

**COUNT II**
**TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

50. Plaintiff realleges and incorporates each of the allegations set forth in paragraphs 1-49 as if restated herein in their entirety.

51. NuWave had and has a reasonable expectation of being able to contract with manufacturers in China for the production of its products, including products that are not the Bravo or Brio that are the subject of this Complaint.

9

52. NuWave had and has a reasonable expectation of being able to meet customer demand for its products, including those that are not the Bravo or Brio, by having said products produced by manufacturers in China.

53. Enaiter knew of NuWave's expectations regarding being able to contract with third parties in China to meet its customers' demand for its products. Otherwise, Enaiter would have had no reason to blacklist NuWave (or cause NuWave to be blacklisted through its agent Sinosure).

54. By blacklisting NuWave in China, or by causing NuWave to be blacklisted by its agent Sinosure, Enaiter has intentionally interfered with NuWave's ability to contract with third parties in China for the manufacture of its products, and as a result, its ability to meet customer demand for its products.

55. Enaiter (and/or its agent, Sinosure) did so without any justification.

56. As a result of Enaiter's and/or its agent Sinosure's blacklisting of NuWave, NuWave has been unable to contract with third parties in China for the production of its products. This has prevented NuWave from entering favorable manufacturing relationships that allow it to meet customer demand in a cost-effective way (as opposed to manufacture in other countries).

57. As a result, NuWave has been injured because it is less able to meet customer demand in an efficient and cost-effective way, as reflected by its damages in an amount to be proven.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff NuWave, LLC respectfully seeks the following relief against Guangdong Enaiter Electrical Appliances Co. Ltd. ("Enaiter"):

A. Judgment that Enaiter has breached valid and enforceable contracts between Enaiter and NuWave, namely:

    a. The Brio Supply Agreement;

    b. PO# EN-2.6Q-20210114-36041/ EN-2.6Q-20210114-36041R;

    c. The Bravo Supply Agreement;

    d. PO# NU-BRV1-20210111-20802/NU-BRV1-20210111-20802R;

    e. PO# EN-BRV1-20210114-20801; and

    f. PO# EN-BRV1-20210114-20802;

B. Judgment that Enaiter has committed tortious interference with prospective economic advantage under Illinois law;

C. Damages in an amount to be proven at trial, but in no event less than the following:

    a. Damages sufficient to compensate NuWave for Enaiter's breach of contract, including actual and consequential damages, and including but not limited to the 3% late shipping charge due under the terms of the Purchase Orders, the additional shipping charges incurred as a result of the late shipments, and lost sales resulting from the late shipments;

    b. Damages sufficient to compensate NuWave for Enaiter's tortious interference with prospective economic advantage.

D. Pre-judgment and post-judgment interest, including costs incurred in this case;

E. An award of NuWave's attorney fees incurred in this action; and

F. Any and all other relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: May 19, 2023                                        Respectfully submitted,

                                                                             /s/ Edward L. Bishop
                                                                             Edward L. Bishop

ebishop@bdl-iplaw.com
Nicholas S. Lee
nlee@bdl-iplaw.com
Benjamin A. Campbell
bcampbell@bdl-iplaw.com
BISHOP DIEHL & LEE, LTD.
1475 E. Woodfield Road, Suite 800
Schaumburg, IL 60173
Telephone: (847) 969-9123
Facsimile: (847) 969-9124

*Attorneys for Plaintiff NuWave, LLC*